UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-400-H

UNITED PARCEL SERVICE CO.                                                    PLAINTIFF

V.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 2727                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This case arises from a grievance that Defendant, The International Brotherhood of Teamsters, Local 2727 (the "Union") filed pursuant to its 2001-2006 Collective Bargaining Agreement (the "Agreement") with Plaintiff, United Parcel Service Co. ("UPS"). The grievance concerned whether the Agreement allows UPS to use non-union mechanics to perform certain aircraft maintenance work overseas, which union representative employees could have performed within the United States. After the Union won its grievance, UPS has appealed to this Court. The issue before this Court is a purely legal one and both sides have effectively moved for a judgment as a matter of law.

This is an important issue for each side and each vigorously and persuasively argued their side in memoranda and in a telephone conference. The Court asked tough questions and the exchange with counsel was helpful.

I.

The operative facts of the case are relatively straightforward. Their application is less so.

UPS engages in the business of transporting parcels and freight worldwide. It employs over

1100 union represented aircraft maintenance technicians ("AMTs") in the United States and Puerto Rico, but none elsewhere. UPS operates many different types of aircraft, some domiciled in the United States and some elsewhere. Some of the aircraft domiciled in the United States actually operate on routes into and out of the United States. Other aircraft operate on routes exclusively between overseas destinations.

UPS and the Union have entered into three collective bargaining agreements over the years. The Agreement issue here was negotiated in 2001 and 2002, and covers the period between 2001-2006. The specific matter at issue here is whether UPS violated the Agreement by having non-union personnel perform two "periodic maintenance checks" ("PMCs") on a particular Boeing 767 aircraft at Taipei, Taiwan, in July, 2005. The Boeing 767 at issue was domiciled in the United States and flew routes into and from international locations. Apparently, the non-union personnel in Taipei performed two PMC checks that are particular to the Boeing 767. PMC 14 is a scheduled 767 maintenance check of the ruder power control actuator and standby engine indicator. PMC 19 is a scheduled 767 aircraft maintenance check involving lubrication and inspection of cargo and crew entry doors.

After learning of these events, the Union filed a grievance No. 2005-0251, claiming that UPS violated the Agreement by having a third party vendor perform the PMC checks in Taipei. The grievance proceeded through various stages. Ultimately, the System Board of Adjustment (the "SBA"), convened pursuant to the Agreement, heard testimony and argument on October 12-13, 2009, and then issued an opinion on April 10, 2010, concluding that the Agreement required that these PMCs be performed domestically by union employees. Subsequently, UPS has appealed to this Court.

II.

Courts may vacate SBA decisions only when (1) the SBA acts outside its authority by resolving a dispute not committed to arbitration; (2) the SBA commits fraud, has a conflict of interest or acts dishonestly in issuing its award; or (3) the SBA fails to construe or apply the contract in resolving legal and factual disputes. *Totes Isotoner Corp. v. International Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 412 (6th Cir. 2008); *Michigan Family Resources, Inc. v. Service Employees Int'l Union Local 517M,* 475 F.3d 746, 753 (6th Cir. 2007). Here, UPS argues only the last circumstance.

The standard to void an SBA award under the third circumstance is quite high. The arbitration decision must be "so ignorant of the contract's plain language" that it seems implausible that the arbitrator was construing the contract. *Totes Isotoner Corp.*, 532 F.3d at 412. The arbitrator's interpretation must be "so untethered to the terms of the agreement . . . that it could cast doubt as whether the arbitrator indeed engaged in interpretation." *Michigan Family Resources, Inc.*, 475 F.3d at 753. Thus, when the arbitrator "strays from interpretation and application . . . he enters the forbidden world of effectively dismissing his own brand of industrial justice making the arbitrator's decision unenforceable." *Id.* at 752. However, the arbitrator does not exceed his authority every time he makes an interpretative error, "he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Id.* at 756. Or, when the arbitrator "effectively disregards the contract language rather than interpreting it" in good faith. *Dematic Corp. v. United Auto Workers*, 635 F.Supp.2d 662, 678 (W.D. Mich. 2009).

Therefore, in reviewing an award, the Court does not approach the issues independently,

3

but rather first with a review of the analysis in the SBA decision to determine whether that decision addressed all of the contractual provisions and issues presented in good faith.

III.

The SBA's opinion is relatively straightforward. It identified the issue on appeal and listed all of the pertinent contractual provisions: the Preamble; Article 1 §1(b), (c) and (d); §7(a), (b), and (c); and Article 22, §1(e), §5 and §14(e).

The SBA then discussed the background of the dispute and made a number of important factual findings. It described the various maintenance schedules for different aircraft. More specifically, it discussed the maintenance requirements for the Boeing 767, which were listed as individual maintenance tasks, rather than, as letter designated maintenance programs of the type which the Agreement references. UPS assembled these scheduled maintenance tasks into discreet work packages, called "Periodic Maintenance Checks" ("PMCs"). The SBA found that the PMCs were not required at a specific gateway or at an exact time. It found that Union employees normally performed the PMCs.

Next, the SBA seems to have accurately summarized the various arguments of the parties. UPS focuses on the Preamble and Article 1, Section 1(c) and (d), which it says limits the jurisdiction of the Agreement and the Union to events within the United States. The Union focused on the "unambiguous" requirements of Article 1, Sections 1(b) and (d), and Article 22 which arguably bar UPS from shifting work from Union employees to non-Union employees.

Next, the SBA clarified that it must interpret actual contractual language. It stated its conclusion that

> In my considered opinion, the Union the plain unambiguous
> contract language and undisputed facts of record persuasively

> estblish [sic] the union's claim that Company violated Articles 1 and 22, *supra* when it utilized third party vendor mechanics not covered by the Agreement to perform the PMC 14 and PMC 19 maintenance checks on 767N360UP in Taipei, Taiwan on or about July 30, 2005. A web of interwoven jurisdiction of work clauses in Article 1 and 22, read together and in context, reserve for performance by Local 2727 represented employees and prevent movement to an international location, except under expressly authorized facts and circumstances, the PMC 14 and PMC 19 maintenance check work at issue in this case.

The SBA was strongly persuaded by the similar language in Article 22, §1(e) and §5; Article 1, §1(b); Article 1, §2 and, finally, in Article 1, §7(b), each of which suggests that UPS may not move work normally performed by Union workers.

Next, the SBA addressed some of UPS's specific arguments. UPS contended that the Agreement's maintenance provisions do not govern the unique PMCs applicable to the Boeing 767. The SBA concluded, however, that the PMCs are simply a segmented version of the various maintenance requirements which the Agreement discusses. Consequently, it concluded that the Agreement does cover the Boeing 767 maintenance provisions. In a related issue, the SBA considered whether the absence of a specific reference to the Boeing PMCs should be construed to mean that the Agreement did not govern their performance. The SBAs factual findings demonstrate otherwise.

In its last paragraph, the SBA discusses UPS's argument that the Agreement's jurisdiction is limited to the United States and its territories. Although the SBA does not specifically mention the Agreement's Preamble, the paragraph certainly addresses that line of UPS's argument. The SBA concludes that such an interpretation would make other language unenforceable and would create a *non sequitur* within the Agreement.

IV.

The Court concludes that the SBA has addressed the relevant factual and contractual issues in a straightforward manner. Its factual conclusions seem at least reasonable. These conclusions alone make the SBA's decision difficult to overturn.

UPS argues that the SBA decision cannot stand because the Union's jurisdiction is limited to 767 PMC checks performed in the United States. The Preamble language limiting the scope of the Agreement could be construed as conflicting with other provisions that prohibit UPS from transferring maintenance work overseas which was previously performed in the United States. Consequently, because the work at issue here was previously performed in the United States, one could conclude that UPS has, in effect, transferred work overseas which it had previously assigned to Union workers. To divest the Union of jurisdiction in this manner appears to contravene a central provision of the Agreement. Though UPS argues strenuously that the Agreement does not govern PMC checks, the Union makes an equally convincing argument otherwise. The Court concludes that the SBA has directly addressed these conflicts and has reached an acceptable conclusion.

UPS argues vigorously that the Agreement's jurisdictional provisions excluding international work are clear and unambiguous. It is apparent, however, that some of the relevant provisions could be reasonably construed to conflict with one another. Nevertheless, UPS argues vigorously that the SBA simply ignored certain provisions or "read them out" of the Agreement. The Court respectfully disagrees with this characterization. The SBA appears to have engaged in a good faith effort to reach a reasonable interpretation of provisions which are in conflict. By electing to apply one conflicting provision over another, the SBA cannot be said to have ignored the provision which it deems not to govern in a particular instance. Nor can it be

said that the SBA, through its opinion, has made a particular provision superfluous.

There is plenty of room for disagreement about the contractual dispute here. The Court concludes that the SBA has not ignored any contractual provision, but rather has attempted to harmonize them. Much of UPS's argument concerns its suspicion that the Union will use this result as a precedent in other cases. This Court only reviews the decision for its application to the instant circumstances and not for a broader application. In doing so, the Court feels quite comfortable in affirming the SBA interpretation and decision on the instant circumstances.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that UPS's motion to vacate the SBA award is DENIED.

IT IS FURTHER ORDERED that the Union's motion to dismiss is SUSTAINED, the complaint is DISMISSED and, therefore, the award of the System Adjustment Board dated April 10, 2010, is AFFIRMED.

This is a final and appealable order.

cc:    Counsel of Record